UNITED STATES DISTRICT COURT WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KENT SLAUGHTER, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiffs, | |
| vs. | **CLASS ACTION COMPLAINT** |
| BASS PRO, INC., | **JURY TRIAL DEMANDED** |
| and | |
| JOHN DOES 1-100, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff, KENT SLAUGHTER ("Plaintiff") by and through undersigned counsel, on behalf of himself and all other entities and persons similarly situated, sues Defendant Bass Pro, Inc., ("Defendant" or "Bass Pro") and for his Complaint alleges, upon information and belief and based on the investigation to date of his counsel, as follows:

**INTRODUCTION**

1. This is a class action brought for the benefit and protection of Plaintiff and all other similarly-situated consumers who purchased from Defendant Bass Pro "Redhead Lifetime Guarantee All- Purpose Wool Socks," in order to obtain damages, restitution, injunctive, and other relief necessitated by Defendant's unlawful, unfair, and fraudulent advertisement concerning its Redhead Lifetime Guarantee All- Purpose Wool Socks (the "Socks" or the "Product").

2. Defendant Bass Pro touts itself as a recognized leader in retail, manufacturing, hospitality, and conservation education. Defendant manufactures, markets, distributes, and

sells the Socks to consumers across the United States under the false premise that the Socks come with a lifetime warranty.

3. Defendant Bass Pro has uniformly misrepresented to consumers, and continues to misrepresent to consumers, that its Product is sold with a "Lifetime guarantee" warranty (the "Lifetime Warranty"), meaning that a purchaser can return the Socks when they wear down and Defendant Bass Pro will always replace them with a new pair of Socks. Among other advertisements and representations, Defendant offers the Socks for sale, along with the following promise: "Lifetime guarantee – if they wear out, they get replaced!"[1]

4. Defendant's representations regarding the Product's Lifetime Warranty are false. For some period of time, as alleged in more detail below, when a consumer would visit a Bass Pro store to return a pair of the Socks, Defendant would actually honor the Lifetime Warranty by replacing the consumer's Socks with a new pair of the Socks, at no charge. However, by approximately January 2021, Defendant changed its practices and decided to no longer honor the Lifetime Warranty. According to Defendant's current practices, when a purchaser returns the Socks pursuant to the purported Lifetime Warranty, Defendant merely replaces the Socks with a new, different pair of socks that only comes with a limited 60-day warranty (the "60-Day Socks"). Defendant has changed the design of the 60-Day Socks in order to differentiate them from the Socks—by adding a distinctive stripe pattern to them—presumably so that its store employees know that no warranty will be honored for those 60-Day Socks beyond the limited warranty period.

5. By making false, fraudulent, and misleading statements to consumers, Defendant Bass Pro has deceived thousands of consumers who have purchased the Socks under the false belief that the Socks come with the purported Lifetime Warranty. Consumers have been misled, induced and defrauded into spending money on a product that cannot be

---

[1] https://www.basspro.com/shop/ProductDisplay?urlRequestType=Base&catalogId=3074457345616676768&categoryId=10686&productId=85244&urlLangId=-1&langId=-1&top_category=%5BLjava.lang.String%3B%40b134d51c&parent_category_rn=%5BLjava.lang.String%3B%406b5a3d01&storeId=715838534 (last accessed on June 30, 2022).

replaced for any reason at any time during a consumer's lifetime and as a result, Plaintiff and other purchasers have been harmed by Defendant's fraudulent misrepresentations and false advertising.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action under 28 U.S.C § 1331 in that it presents a claim arising under federal law, specifically the enforcement of the Magnuson-Moss Consumer Products Liability Act, 15 U.S.C § 2301, et seq. This Court also has jurisdiction over this action under 28 U.S.C.§ 1332(d) of the Class Action Fairness Act because the aggregated claims of the class members in this manner exceeds the sum or value of 5,000,000 exclusive of interest and costs, because at least one Class member is a citizen of a state different from Defendant.

7. Venue is proper in this District pursuant to 28 U.S.C.§ 1391 (b) and (c) because(c), because: (i) Defendant is a citizen of Missouri (the "State") actively doing business in this State and subject to personal jurisdiction throughout the State; (ii) Defendant transacts business in the State and in the District based on its sales with residents of the District; (iii) upon information and belief Defendant has committed unlawful acts in the District by and through its sales and/or finance practices with residents of this District; and (iv) a substantial part of the events giving rise to the claim occurring in this District.

## PARTIES

8. Plaintiff Slaughter was at all times relevant to this matter a resident of the state of Missouri. Plaintiff Slaughter was deceived by the fraudulent and misleading representations of Defendant that the Socks came with a Lifetime Warranty, which Lifetime Warranty was a material factor in his decision to purchase the Socks.

9. Defendant Bass Pro Inc. is a corporation with its headquarters located at 2500 E. Kearney, Springfield, Missouri. Defendant Bass Pro is, or was, also affiliated with several other related entities, including Bass Pro Outdoor World, LLC., BPS Catalog, LP., Bass Pro Outdoors Online, LLC and Bass Pro Shops, Inc. Defendant Bass Pro also manufactures,

3

Case 6:22-cv-03174-RK   Document 1   Filed 07/08/22   Page 3 of 17

markets, and sells a wide variety of hunting, fishing, and outdoor gear, including the Socks. Defendant Bass Pro operates over forty retail outlets nationwide and generates sales through its seasonal catalogs, television and radio programs, and its website. Since it began selling the Socks, Defendant Bass Pro has misrepresented to consumers in its marketing and advertising, including every product tag and label, that its Product comes with a Lifetime Warranty. Defendant's Socks are advertised, marketed, and sold throughout the United States, including Missouri.

**FACTS COMMON TO ALL CLASS MEMBERS**

10. At all relevant times, Defendant Bass Pro was and currently is in the business of designing, researching, manufacturing, testing, advertising, promoting, marketing, selling, and distributing consumer products, including the Socks.

11. Defendant Bass Pro designs, manufactures, markets, advertises, warrants, and sells the Product as a "hunting, hiking, or everyday pair of socks" with a Lifetime Warranty.

12. Defendant Bass Pro designs, manufactures, markets, advertises, warrants, and sells the Product with the following statements displayed on the package: "THE LAST SOCK YOU'LL EVER NEED TO BUY."



13. To say the Lifetime Warranty was and currently is a key selling point for the Socks would be an understatement. The Lifetime Warranty was, and still is, promoted with a

nationally-integrated TV, print, and internet advertising campaign. Print and online advertisements boast statements such as "[t]hese socks are backed by our Lifetime Guarantee" and "[i]f ever they wear out, just return them for a FREE replacement!" Among many other false and misleading public statements/advertisements, a store manager at Defendant Bass Pro's Nashville, Tennessee store promoted the Product's Lifetime Warranty on Defendant's behalf with the following public statement: "what makes it [the Product] really unique, is it truly is a lifetime sock. If anything ever happens, if a dryer steals one of them on you, you bring the other one in, and we give you a brand-new pair of socks for [] life. Just an outstanding stock. Number one seller in our company and number one seller at our store, come check it out."[2]

14. Defendant Bass Pro has sold and continues to sell thousands of its Socks by providing this Lifetime Warranty assurance to consumers. None of the advertisements disclose that the Lifetime Warranty is, in reality, only a limited warranty.

15. Indeed, the Lifetime Warranty Guarantee is a hollow promise because when a consumer returns the Socks pursuant to the Lifetime Warranty, Defendant Bass Pro replaces the Socks with a new pair of different socks (the 60-Day Socks).

**PLAINTIFF'S INDIVIDUAL ALLEGATIONS**

16. At various times between 2014 and 2021, Plaintiff purchased new a total of approximately 12 different pairs of the Socks from the Bass Pro superstore in Springfield, Missouri.

17. The purported Lifetime Warranty was a material part of Plaintiff's decision to purchase the Socks.

18. In accordance with the impressions that Defendant intended to create through its marketing efforts, Plaintiff reasonably understood the terms of the Lifetime Warranty to mean that whenever the Socks became worn, they would be replaced with a new pair of

---

[2] https://www.youtube.com/watch?v=BzNBOEe6AIQ (last accessed June 30, 2022).

Socks. And for several years after Plaintiff first purchased the Socks, Defendant's own actions were in accordance with Plaintiff's understanding. From time-to-time beginning in approximately 2015, Plaintiff visited the Bass Pro superstore in Springfield, Missouri to return the Socks, typically 2-4 pair at a time. On multiple occasions during this time period, when Plaintiff presented the Socks that he wished to return, Defendant provided Plaintiff with replacement Socks at no charge, which Socks came with the same Lifetime Warranty as the Socks that Plaintiff returned. The last such exchange occurred in approximately early 2020.

19. In approximately January 2021, Plaintiff again attempted to return four (4) pair of Socks in accordance with the Lifetime Warranty. In a departure from past experiences, Plaintiff was told that the store clerk could not assist with the exchange, and Plaintiff was directed to visit the customer service department at the other end of the store. Customer service ultimately told Plaintiff—over his objections and demands that Defendant continue to honor the Lifetime Warranty—that he could no longer return the Socks pursuant to the Lifetime Warranty. Instead of honoring the Lifetime Warranty, Defendant would only provide Plaintiff with a different product: the distinctively-marked 60-Day Socks.

20. On or about June 29, 2022, Plaintiff became aware of an advertisement by Defendant offering to sell the Socks, with coverage by the Lifetime Warranty. Plaintiff placed an online order for the Socks on that date, paying $11.99 for one pair of the Socks. Bass Pro filled the order and, on or about July 6, 2022, Plaintiff received the Socks. Despite Defendant's knowledge that it had intentionally advertised the Socks to be accompanied by a Lifetime Warranty, Defendant removed any packaging from the Socks delivered to Plaintiff on or about July 6 reflecting the applicability of a Lifetime Warranty in connection with those Socks. Defendant did so because—despite its intentionally false and deceptive advertising—Defendant knows that it will not honor any Lifetime Warranty for those Socks.

**CLASS ACTION ALLEGATIONS**

21. Pursuant to Rules 23(a), (b)(3), (b)(2), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and all other similarly

situated consumers in the United States as members of the following proposed Nationwide and Missouri State classes. The proposed Classes are defined as follows:

  a. **Nationwide class:** During the fullest period allowed by law, all persons within the United States who purchased the Socks from Bass Pro at any time and at any location (the "Class").

  b. **Missouri subclass:** During the fullest period allowed by law, all persons who purchased the Socks sold by Bass Pro at any location in Missouri, including without limitation any online purchase (regardless of the shipping address of the consumer) (the "Subclass").

  c. Nationwide class and Missouri subclass members are collectively referred herein as "Class Members."

  d. Like Plaintiff, all Class Members purchased the Socks with the understanding that the Lifetime Warranty meant that the Socks could be replaced at any time during the time that each Class Member owned the Socks, and that such understanding was reasonable and was a material basis for the decision to purchase the Socks, which Defendant intended to foster through its various marketing activities in connection with the sale of the Socks.

22. Excluded from the Class and Subclass are assigned judges and members of their families within the first degree of consanguinity, Defendants, and their subsidiaries, affiliates, officers, and directors.

23. The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class and Subclass.

24. The proposed Class and Subclass are so numerous that individual joinder of all their members is impracticable because members of the Class number in the tens or hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but are objectively ascertainable and will be determined through appropriate discovery.

25. Defendant possesses objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the damages suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies class members.

26. Class Members may be notified of the pendency of this action by mail, publication and/or through the records of Defendant and third-party retailers and vendors.

27. There are common questions of law and fact affecting Plaintiff and Class Members. Common legal and factual questions include, but are not limited to:

   a. Whether Defendant markets and advertises the Socks in a way that is false or misleading.

   b. Whether by the misconduct set forth in this complaint, Defendant has engaged and continues to engage in unfair, fraudulent, or unlawful business practices;

   c. Whether Defendant's conduct was committed knowingly and/or intentionally;

   d. Whether Defendant's conduct constitutes violations of the federal and/or state laws asserted herein;

   e. Whether Defendant had a duty to correct its fraudulent statements;

   f. Whether class members were harmed by Defendant's false statements;

   g. Whether Defendant was unjustly enriched by its conduct;

   h. Whether the class is entitled to punitive damages;

   i. Whether the class is entitled to recover statutory attorney's fees;

   j. Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive and/or monetary relied and, if so, the amount and nature of such relief.

28. Plaintiff's claims are typical of the claims of the proposed Class and Subclass because Plaintiff and Class Members were harmed in the same manner by the same conduct.

29. Plaintiff and Class Members have all sustained economic injury arising out of Defendants violations of common and statutory law alleged herein.

30. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass.

31. Plaintiff's interests do not conflict with the interests of the Class and Subclass he seeks to represent. Plaintiff has retained counsel competent and experience in prosecuting class actions, and Plaintiff intends to prosecute this action vigorously.

32. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members.

33. Given the relatively small amount of damages at stake for any of the individual Class Members, individual litigation is not practicable.

34. Individual Class Members will not wish to undertake the burden and expense of individual cases.

35. In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system. Individualized ligation also presents the potential for inconsistent or contradictory judgments.

36. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

37. Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiff and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

38. In each case, Defendant used deceptive marketing and sales techniques aimed at the Class Members, causing harm to all Class Members as a result of such intentional conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

39. Proposed class counsel possesses the knowledge, experience, reputation,

ability, skill, and resources to represent the class and should be appointed lead counsel for the class.

## COUNT I

**(Violations of the Missouri Merchandising Protection Act, MO. REV STAT. 407.010, ET SEQ.)**

40. Plaintiff and members of the Subclass reallege and incorporate by reference each allegation set forth above.

41. Defendant disseminated and "Advertisement" within the meaning of RSMo. 407.010(1).

42. Defendant advertised "Merchandise" with the meaning of RSMo. 407.010(4)

43. Plaintiff is a "Person" within the meaning of RSMo. 407.010(5)

44. Defendant engaged in a "Sale" within the meaning of RSMO 407.010(6)

45. Defendant engaged in "Trade" or "Commerce" within the meaning of RSMo. 407.010(7).

46. Defendant's conduct as set forth above amounts to deception, fraud, false pretense, false promise, misrepresentation, and unfair practice in violation of RSMo § 407.020.

47. Defendant engaged in the concealment, suppression, or omission of a material fact in connection with the sale or advertisement of any merchandize in trade or commerce in violation of RSMo § 407.020.

48. Plaintiff and members of the Subclass made purchases primarily for personal, family, or household purposes in connection with and in relation to Defendant's deception, fraud, false pretense, false promise, misrepresentation and unfair practice and/or concealment, suppression, or omission of a material fact in connection with the sale or advertisement of merchandise in trade or commerce.

49. Plaintiff and members of the Subclass suffered an ascertainable loss of money or property, real or personal, as a result of the use or employment by Defendant of a method,

act, or practice declared unlawful by RSMo. § 407.020 including but not limited to:

    a. For all Socks purchased by Plaintiff and members of the Subclass, the difference in value between Socks covered by a Lifetime Warranty, on the one hand, and Socks not covered by any such warranty.

    b. Amounts paid to purchase merchandise in connection with and in relation to the false, deceptive, misleading and unlawful advertisement.

    c. Losses associated with traveling to a point of sale in response to the false, deceptive, misleading, and unlawful advertisement such standard IRS mileage cost.

50. Defendant's false promises, misrepresentations and omissions of material fact in connection with the advertisement and sale of the Socks took place in the state of Missouri and violated the Missouri Merchandising Protection Act.

51. As a direct and proximate result of Defendant's violations of the Missouri Merchandising Protection Act, Plaintiff and members of the Subclass have suffered and will continue to suffer damages and ascertainable losses of money or property, in amounts to be determined at trial. Plaintiff and members of the Subclass would not have purchased the Product, or would have paid less for it, had they known the Product does not come with a Lifetime Warranty.

52. Plaintiff, on behalf of himself and the other members of the Subclass, demand judgment against Defendant for actual damages, reasonable attorney's fees and other equitable relief as the Court may deem necessary or proper.

## COUNT II

**(Breach of Express Warranty)**

53. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

54. Defendant marketed and sold the Socks into the stream of commerce with the intent that they would be purchased by Plaintiff and Class Members.

55. Defendant uniformly and expressly warranted that the Socks would come with a Lifetime Warranty, so that a consumer could return the Socks for free lifetime replacement if the Socks were to become worn out or damaged for any reason. This express warranty was provided to Plaintiff and Class Members by Defendants as it was specifically listed on the packaging of the Product itself. This express warranty became part of the basis of the bargain and is part of a standardized contract between Plaintiff and Class Members, on the one hand, and Defendant, on the other.

56. Defendant failed to honor the terms of the Lifetime Warranty. Under the terms of the Lifetime Warranty, Defendants are obligated to replace for life worn or damaged Socks sold to Plaintiff and Class Members.

57. At the time of the sale and beyond, Defendant breached the terms of the express warranty to Plaintiff and Class Members in that the Socks were not actually covered by a Lifetime Warranty as promised. Rather, when a consumer returns the Socks pursuant to the Lifetime Warranty, Defendant merely replaces the Socks with a different pair of socks that have only a 60-day warranty (the 60-Day Socks).

58. Defendant's warranty fails of its essential purpose because it purports to warrant that the Product has a Lifetime Warranty when in reality any warranty covering the Socks is far more limited.

59. Defendant knew of its obligations under the Lifetime Warranty. However, Defendant willfully refused to honor the Lifetime Warranty. Defendants have denied and continue to deny their express obligations to Plaintiff and the Class pursuant to the Product's purported Lifetime Warranty.

60. When Plaintiff and Class Members purchased the Product, they reasonably relied on Defendant's representations and warranties regarding the material characteristics of the Product itself and the Lifetime Warranty.

61. Plaintiff and Class Members performed all conditions precedent under the contract between the parties. Within a reasonable time of discovering Defendant's breach of

express warranty, Plaintiff notified Defendant of the breach. Despite notice and Defendant's knowledge of the breach, Defendant has failed and refused to honor the warranty. Plaintiff and the Class, by their various comments and complaints, have given Defendant a reasonable opportunity to cure their failures with respect to the warranty, but Defendant has not done so. Defendant has repeatedly denied, failed to replace the Socks, or failed to respond to the warranty comments and complaints made by Plaintiff and other Class Members.

62. Further, to the extent any limitations in the warranty were disclosed to consumers or otherwise apply—which Plaintiff and Class Members deny—the warranty itself is unconscionable and unenforceable in that it fails to achieve the specified purpose. Defendant either knew or was careless about the deceptive nature of its sales and marketing practices with respect to the Socks and the purported Lifetime Warranty. Plaintiff and Class Members had no reason to believe, at the time of purchase, that the Lifetime Warranty did not actually mean the Socks would not be replaced at any time during their lifetime. Purchasers lacked any meaningful choice with respect to the warranty terms.

63. Defendant's breach of the express warranty has directly and proximately caused Plaintiff and Class Members to suffer damages and losses in the amount to be determined at trial. Plaintiff and Class Members have suffered actual damages in that they decided to purchase and use the Socks, with the purported Lifetime Warranty being a material part of that decision, but received Socks not covered by a Lifetime Warranty, rendering the Socks of much lesser value than reasonably understood at the time of purchase.

## COUNT III

### (Violation of Magnuson-Moss Act)

64. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

65. The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C § 2301, et seq. provides a private right of action to purchasers of consumer products against retailers who, *inter alia,* fail to comply with the terms of a written warranty, express warranty and/or

13

Case 6:22-cv-03174-RK   Document 1   Filed 07/08/22   Page 13 of 17

implied warranty.

66. Plaintiff and the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

67. Product is a "consumer product" as defined in 15 U.S.C. § 2301(1).

68. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

69. Defendant provided Plaintiff and the Class with a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

70. This warranty provided with the Socks sold to Plaintiff and Class Members, which promises, among other things "Lifetime guarantee – if they [the Socks] wear out, they get replaced!"

71. Defendant has failed to honor this Lifetime Warranty by offering a replacement pair of socks that only has a limited (60-day) warranty.

72. Defendant has been given reasonable opportunity by Plaintiff and Class Members to cure their conduct by complying with the warranty yet has repeatedly failed to do so.

73. Plaintiff and Class Members have suffered damages as a direct and proximate result of Defendant's breach of warranty.

74. As demonstrated above, Defendant failed to comply with the express warranty with regard to the Product that they manufactured, advertised, distributed, marketed and/or sold.

75. By virtue of the foregone, Plaintiff and Class Members are entitled to an award of damages and other appropriate relief, including attorneys' fees.

## COUNT IV

### (Unjust Enrichment)

76. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

77. Plaintiff and Class Members conferred a benefit on Defendant by responding to

Defendant's advertisement and, as alleged herein, purchasing the Socks from Defendant.

78. Plaintiff and Class Members conferred a benefit on Defendant by making purchases of the Socks at its various points of sale.

79. Defendant was aware of this benefit, and, in fact, intended for this to occur as a result of its fraudulent, deceitful marketing and sales practices.

80. Defendant has been unjustly enriched in retaining the profits derived from Class Members' purchases, which retention under these circumstances is unjust and inequitable.

81. Because Defendant's retention of the profits and benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must disgorge its gross profit associated with the purchases made by Plaintiff and the Class Members for its unjust enrichment.

## COUNT V
### (Fraud)

82. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above, which detail fraud with specificity.

83. Defendant made affirmative false and misleading statements.

84. Alternatively, Defendant fraudulently omitted and concealed material facts.

85. Defendant had superior knowledge as the facts contained in its false and misleading statements and/or omissions and/or concealments.

86. Plaintiff and Class Members had no means available to determine the falsity of the statements or to discover the omissions and concealment.

87. Defendant intended for Plaintiff and Class Members to rely upon its statements, omissions, and concealment.

88. Plaintiff and Class Members materially relied upon the statements, omissions, and concealment.

89. Plaintiff and Class Members reliance was justifiable and reasonable.

90. Plaintiff and Class Members lacked knowledge that the statements were false.

91. As a direct and proximate result, Plaintiff and Class Members were damaged.

92. Defendant's actions intentionally harmed Plaintiff and the other Class Members without just cause, and as such were evil, wanton, reckless, and intentional, and made with deliberate and flagrant disregard for consumers, so as to justify the imposition of punitive damages to punish Defendant and to deter Defendant and others from engaging in similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the putative Class Members, prays for a judgment:

a. Determining that this action is a proper class action and certifying the Class, as defined herein;

b. Appointing Plaintiff as Class Representative

c. Appointing the undersigned as Class Counsel

d. Finding Defendant liable to Plaintiff and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e. Awarding statutory damages as appropriate;

f. Awarding disgorgement of gross profits and all other forms of equitable monetary relief;

g. Awarding punitive damages based on Defendants' malicious, oppressive, fraudulent, wanton and reckless behavior;

h. Awarding pre- and post-judgment interest;

i. Awarding injunctive relief, as claimed herein or as the Court may deem proper;

j. Awarding Plaintiff and Class Members attorney fees and all litigation costs;

k. Awarding Plaintiff and Class Members such other relief as may be just and proper;

l. Awarding compensatory damages against Defendant in favor of Plaintiff and the Class for damages sustained as a result of Defendant's wrongdoing; and

m. Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**SINGLETON SCHREIBER, LLP**

By: */s/ Gerald Singleton*
GERALD SINGLETON, #72259
gsingleton@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478