IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

KENT SLAUGHTER, ON BEHALF OF )
HIMSELF AND ALL OTHERS )
SIMILARLY SITUATED; )
                                          Plaintiff,      )     Case No. 6:22-cv-03174-RK
                                                      v.                   )

BASS PRO, INC., BPS DIRECT, LLC, )
BASS PRO OUTDOOR WORLD, LLC, )
BASS PRO GROUP, LLC, GREAT )
AMERICAN OUTDOORS GROUP, LLC, )
GREAT OUTDOORS GROUP, LLC, )
AMERICAN SPORTSMAN HOLDINGS )
CO., )
                                          Defendants.    )

## ORDER

Before the Court is Defendants' motion to dismiss Plaintiff's class action complaint. (Doc. 18.) The motion is fully briefed. (Docs. 19, 31, 41.) After careful consideration and for the reasons explained below, the motion is **DENIED**.

I.     Background[1]

Defendants[2] manufacture, market, distribute, and sell "Redhead Lifetime Guarantee All-Purpose Wool Socks" ("the Socks"). (Doc. 8 at ¶¶ 1, 2.) The Socks are sold with a "lifetime guarantee" or a lifetime warranty meaning that purchasers can return them to be replaced at no cost. (*Id.* at ¶ 3.) The Socks are advertised as "The Last Sock You'll Ever Need to Buy," and that "[i]f they ever wear out, just return them for a FREE replacement." (*Id.* at ¶ 13.) A Nashville, Tennessee, Bass Pro store manager specifically promoted the Socks in this way:

> [W]hat makes [the Socks] really unique, is it truly is a lifetime sock. If anything ever happens, if a dryer steals one of them on you, you bring the other one in, and we give you a brand-new pair of socks for [the] life [*sic*]. Just an outstanding stock.

---

[1] In considering Defendants' motion to dismiss, the Court accepts as true the facts pleaded in Plaintiff's complaint and construes them in the light most favorable to Plaintiff as the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

[2] Plaintiff refers collectively to all named defendants as "Defendant Bass Pro."

> Number one seller in our company and number one seller at our store, come check it out.

(*Id.* at ¶ 13) (third alteration added).[3]

In early 2021, Defendants began replacing the Socks under the lifetime warranty with wool socks that only have a 60-day warranty ("60-Day Socks"). Plaintiff does not allege the 60-Day Socks are materially different from the Socks, other than having only a 60-day warranty and a "distinctive stripe pattern." (Doc. 8 at ¶ 4.) As a result, Plaintiff alleges that (1) Defendants' representations about the lifetime warranty for the Socks are false and the lifetime guarantee is a "hollow promise," and, alternatively, (2) Defendants breached the lifetime warranty for the Socks by replacing the Socks under the lifetime warranty with 60-Day Socks (rather than a new pair of Socks).

Plaintiff Kent Slaughter alleges that between 2014 and 2021 he purchased approximately twelve pairs of the Socks. (*Id.* at ¶ 16.) Plaintiff alleges that the lifetime warranty was a "material part" of his decision to purchase them and that he "understood the terms of the Lifetime Warranty to mean that whenever the Socks became worn, they would be replaced with a new pair of Socks." (*Id.* at ¶¶ 16, 18.) Beginning in approximately 2015, Plaintiff periodically returned two to four pairs of the Socks at a time. (*Id.* at ¶ 18.) Plaintiff states that "[o]n multiple occasions," Defendants replaced the Socks under the lifetime warranty by exchanging them for another pair of the Socks (i.e., such that the replacement socks themselves came with the same lifetime warranty as the originally purchased socks). (*Id.*) In early 2021, however, Plaintiff alleges that he attempted to return four pairs of the Socks but was told by the store's customer service department that he would only be provided with the 60-Day Socks in the exchange under the Socks' lifetime warranty. (*Id.*) Finally, Plaintiff alleges that on June 29, 2022, he purchased a pair of the Socks online for $11.99, and that the Socks he received were delivered without any packaging "reflecting the applicability of a Lifetime Warranty in connection with those Socks," despite having purchased the Socks after becoming aware of an advertisement by Defendants to sell the Socks. (*Id.* at ¶ 20.) Plaintiff also alleges that he was "deceived by the fraudulent and misleading representations of [Defendants] that the [Redhead Lifetime Guarantee All-Purpose Wool] Socks come with a Lifetime Warranty," a "material factor in [Plaintiff's] decision to purchase" the Socks. (*Id.* at ¶ 8.)

---

[3] In his amended complaint, Plaintiff included a link to the referenced video of this alleged statement, upon review from which the Court added the third alteration. (Doc. 8 at 5 n.2.)

2

Plaintiff filed an amended class action complaint on July 20, 2022, asserting the following five claims both individually and on behalf of a proposed class: Count I – violation of the Missouri Merchandising Practices Act ("MMPA"); Count II – breach of express warranty; Count III – violation of the Magnuson-Moss Warranty Act; Count IV – unjust enrichment; and Count V – fraud. (*Id.* at 10-16.) Plaintiff seeks *inter alia* actual and statutory damages, disgorgement or other equitable monetary relief, punitive damages, and injunctive relief. (*Id.* at 16-17.) Defendants argue that Plaintiff's amended complaint must be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and failure to state a claim.

## II. Discussion

### A. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

A party may move to dismiss a claim for lack of subject-matter jurisdiction under Rule 12(b)(1) of the rules governing civil actions in federal courts. One component of a federal court's subject-matter jurisdiction is what is known as a plaintiff's Article III standing. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). The doctrine of Article III standing is "rooted in the traditional understanding of a case or controversy," and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (citations omitted). To cross the threshold into federal court, Article III standing requires that plaintiffs – including any named plaintiffs in a class action lawsuit[4] – must demonstrate the following three things: "(1) an injury-in-fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision in court." *Carlsen*, 833 F.3d at 908 (cleaned up). These three things (injury-in-fact, traceability, and redressability) make up the "'irreducible constitutional minimum of [Article III] standing.'" *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Specifically, as to the first element of Article III standing, "[a]n injury-in-fact exists where the plaintiff has sustained, or is in immediate danger of sustaining, a concrete and particularized harm that is actual or imminent, not conjectural or hypothetical." *Philadelphia*

---

[4] Named plaintiffs in a class action lawsuit "must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (citation and quotation marks omitted).

3

*Indem. Ins. Co. v. Atl. Specialty Ins. Co.*, No. 6:20-CV-03065-MDH, 2020 WL 4819949, at *1 (W.D. Mo. Aug. 19, 2020) (quotation marks omitted).

To satisfy the federal jurisdictional requirement at this early stage, Plaintiff must plead or allege facts (whether specific or general) demonstrating these three elements of Article III standing are satisfied. *See Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) ("If the plaintiff offers no factual allegations, specific or general, demonstrating an injury in fact, the court should dismiss the claim.") (citation omitted). In *Lujan* the Supreme Court recognized that "general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate Article III standing at the early pleading stage. 504 U.S. at 561 (citation and quotation marks omitted).[5] In determining whether a plaintiff has sufficiently alleged the elements of Article III standing, the Court "must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor." *Young Am. Corp.*, 424 F.3d at 843 (citing *Lujan*, 504 U.S. at 561) (other citation omitted).

1. **Injury-In-Fact**

Defendants first argue that Plaintiff's complaint must be dismissed because he does not allege any harm or injury to the extent Plaintiff does not state, for example, that he has tried to return any pair of socks (whether the Socks or 60-Day Socks) and has been denied a replacement. (Doc. 19 at 11.) For the reasons explained below, the Court considers this argument in the context of Rule 12(b)(1) as raising a question of Plaintiff's Article III standing and thus the Court's subject-matter jurisdiction.

In making this argument to dismiss Plaintiff's amended complaint, Defendants rely on Eighth Circuit caselaw analyzing Article III standing in products liability cases in which plaintiffs seek to recover only based on economic injuries or harm. In these cases – including cases seeking relief under various state-law consumer protection and common law claims based on an asserted defect in a product and seeking recovery only for economic injury – the Eighth Circuit has held that Article III standing (specifically the injury-in-fact requirement) is satisfied only so long as there is a "manifest defect" in the product the plaintiff purchased. *See, e.g., Johannessohn v.*

---

[5] In *Tuter v. Freud America, Inc.*, No. 4:22-cv-00282-RK, 2022 WL 4636225 (W.D. Mo. Sept. 30, 2022), the Court recognized that there is some question within the Eighth Circuit whether *Lujan*'s general-factual-allegation standard applies post-*Twombly/Iqbal*. *Id.* at *2 n.4. For the reasons stated in *Tuter*, the Court defers to the caselaw in the Eighth Circuit that has continued to recognize and apply the general-factual-allegation-standard recognized in *Lujan* in evaluating jurisdiction at the pleadings stage even post *Twombly/Iqbal*. *See id.*

*Polaris Indus Inc.*, 9 F.4th 981, 988 (8th Cir. 2021); *In re Polaris Mktg., Sales Pracs. & Prods. Liab. Litig.*, 9 F.4th 793, 796-97 (8th Cir. 2021); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014). In practice, then, a products-liability plaintiff asserting only a pecuniary or financial or economic injury (rather than physical injury) can only satisfy Article III's standing requirement so long as the plaintiff alleges (and later proves at subsequent stages in the litigation as appropriate) that the product *he* or *she* purchased *had* the defect on which their claims for relief are ultimately based. *See Wallace*, 747 F.3d at 1030 ("'it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect'") (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)) (emphasis added by *Wallace*).

Here, Plaintiff does only seek to recover for an asserted economic injury or harm. Unlike the cases above, however, this is not a products liability case to which the manifest-defect rule would generally apply. In other words, Plaintiff's claims for relief are not fundamentally based on any *product defect* vis-à-vis the Socks. *See also Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (distinguishing "valid, contract law suits from the 'no-injury products liability law suit'" for which only economic injury is asserted); *cf. Tuter v. Freud Am., Inc.*, No. 4:22-cv-00282-RK, 2022 WL 4636225 (W.D. Mo. Sept. 30, 2022) (applying manifest-defect rule in Article III standing context as to claims where plaintiff's claims were fundamentally based on a defect in the product itself – i.e., that the abrasive wheels have an expiration date and that they fail when used after they expire). Rather, Plaintiff's claims center on an asserted express warranty and certain representations Defendants made about the lifetime warranty/guarantee that accompanied the Socks. While Article III applies in all cases brought before a federal court, the Court finds unpersuasive Defendants' particular reliance on the product-liability line of cases cited above.

Although it is close, accepting as true the factual allegations (specific and general) asserted in Plaintiff's amended complaint, the Court finds that Plaintiff has demonstrated a particularized and actual or imminent (non-speculative) injury-in-fact for purposes of demonstrating Article III standing at this early stage. Specifically, Plaintiff alleges that he purchased the Socks – and paid a particular price for the Socks – based on Defendants' representations, advertisements, and promise of a lifetime warranty for the Socks as meaning lifetime replacement with a pair of Socks (functionally, that the replacement pair is a pair of Socks with a lifetime guarantee). Plaintiff alleges that had he purchased socks that would have been replaced with 60-Day Socks, he would

5

not have purchased the Socks or would have paid less for them.[6] Plaintiff has adequately alleged a cognizable and sufficient injury-in-fact to satisfy Article III standing at this early pleading stage. *See Poppiti v. United Indus. Corp.*, No. 4:19-cv-02028-SNLJ, 2020 WL 1433642, at *2 (E.D. Mo. Mar. 24, 2020) (finding Article III standing satisfied where plaintiff alleged they purchased mosquito-repellant candles "relying on their prominent labeling . . . that the candles effectively 'repel mosquitos & other flying insects,'" and were economically injured by "having overpaid for the products on account of their misrepresentations" when the candles "did not repel mosquitos as advertised"); *Villa Lara v. LB Elecs. U.S.A., Inc.*, No. 17-5222 (JRT/KMM), 2018 WL 3748177, at *3 (D. Minn. Aug. 7, 2018); *see also Fishon v. Peloton Interactive, Inc.*, __ F. Supp. 3d __, 2022 WL 3284670, at *8 (S.D.N.Y. Aug. 11, 2022) (finding sufficient allegation of Article III injury based on plaintiffs' allegation that they "paid increased costs – a 'price premium' – for the[] products as a result of the misrepresentation" by defendant as to the "unique quality about its products – that they enabled access to a 'growing' library of on-demand fitness classes").

Finally, the Court notes that in support of this argument, Defendants also rely on a series of cases referred to as the "*L.L. Bean Cases*" in arguing that Plaintiff has not adequately pleaded a cognizable injury-in-fact to demonstrate Article III standing in this case. (*See* Doc. 19 at 14-15 (collecting "*L.L. Bean Cases*").) In the *L.L. Bean Cases*, the plaintiffs filed suit after L.L. Bean modified its return policy making it more limited or restrictive than when the plaintiffs had made their purchase from L.L. Bean. *See, e.g.*, *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 259-60 (E.D.N.Y. 2018); *Bondi v. L.L. Bean, Inc.*, No. 18 C 1101, 2018 WL 3157712, at *1 (N.D. Ill. June 28, 2018). In the *L.L. Bean Cases*, the various district courts found that the plaintiffs lacked Article III standing because they had not alleged any attempted return and any future injury based on the modified return policy was speculative, for example. *See, e.g.*, *Berger*, 351 F. Supp. 3d at 261-62 (finding plaintiff who purchased jacket prior to the changes to L.L. Bean's return policy did not demonstrate Article III standing because she "has not attempted to return an L.L. Bean product and been refused a refund" and her injury based on a "purported future inability to return her

---

[6] Importantly, the Court emphasizes here that the exact meaning of the lifetime warranty that accompanied the Socks is not at issue in analyzing Article III standing. *See Graham v. Catamaran Health Sols. LLC*, 940 F.3d 4010, 408 (8th Cir. 2017) (recognizing that "whether [a plaintiff's] claims may succeed on the merits is a question separate and apart from [the Court's] standing analysis") (citation omitted); *Carlsen*, 833 F.3d at 908 (cautioning that "it is crucial not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive") (cleaned up) (citation omitted).

6

jacket" was merely speculative); *Bondi*, 2018 WL 3157712, at *2 (finding plaintiff's assertion that he was injured when L.L. Bean "unilaterally repudiated" the 100-percent Satisfaction Guarantee return policy under which he had made his purchase and therefore deprived him of the premium he had paid for his purchase did not establish Article III standing because it was based only on a speculation that he may in the future become dissatisfied with his purchase and wish to return it). Here, though, Plaintiff asserts that he was financially injured (1) when he purchased the Socks based on Defendants' misleading representations regarding the lifetime warranty, and/or (2) to the extent Defendants breached the express warranty by replacing the Socks under the asserted warranty with 60-Day Socks. Even if the *L.L. Bean Cases* were factually analogous, Plaintiff alleges what the plaintiffs in the *L.L. Bean Cases* generally did not: for instance, that he would not have purchased the Socks had he known the Socks do not come with a lifetime warranty as meaning unlimited replacement of the Socks (rather than 60-Day Socks), and that he attempted to return the Socks and was told he could only return them for 60-Day Socks.

### 2. Standing to Pursue Injunctive Relief

Next, Defendants argue that Plaintiff lacks Article III standing to seek injunctive relief. In the context of injunctive relief, the injury-in-fact element of Article III standing "requires a showing that the plaintiff faces a threat of ongoing or future harm," that is, the plaintiff must "'demonstrat[e] that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury [is] certainly impending.'" *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 120 S. Ct. 693, 709 (2000) (internal quotation marks omitted)) (other citation omitted). At the crux of this inquiry is whether the plaintiff can demonstrate "a real and immediate threat that [he] could again suffer similar injury in the future." *Id.* (cleaned up). Plaintiff argues that he has asserted an ongoing harm in that he cannot return the Socks he purchased and receive the same but instead will only receive the 60-Day Socks. In essence, Plaintiff argues he has an ongoing harm to the extent Defendants "will continue to refuse to honor [the] lifetime warranty." (Doc. 31 at 17.) For the same reasons as discussed above, the Court finds Plaintiff's complaint adequately alleges an injury sufficient to support Article III standing to pursue injunctive relief at this early stage in the litigation.[7]

---

[7] In their reply, Defendants argue that Plaintiff does not have standing to seek injunctive relief because the Socks "were discontinued in favor of the New Replacement Socks [60-Day Socks] and Bass

7

### 3. Causation

Finally, Defendants rely on the causation requirement of Article III standing specifically as to Defendants Bass Pro, Inc.; BPS Direct, LLC; Bass Pro Group, LLC; Great American Outdoors Group, LLC; Great Outdoors Group, LLC; and American Sportsman Holdings Co., and argue that Plaintiff "cannot demonstrate his alleged injury is traceable" to these defendants.

Article III standing requires a plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022-23 (8th Cir. 2012) (citation and quotation marks omitted). Stated differently, a plaintiff must allege facts demonstrating the asserted injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 961 (8th Cir. 2011) (cleaned up). The Court's inquiry into a plaintiff's standing under Article III is separate from assessing the merits of an asserted claim. *Red River Freethinkers*, 679 F.3d at 1023.

Plaintiff alleges that each of the separately named defendants "are related corporate entities" and operate "individually or collectively, through an integrated corporate structure," to "manufacture, market, and sell" the Wool Socks with Lifetime Warranty. (Doc. 8 at ¶ 9.) Plaintiff alleges that these defendants "operate[] over forty retail outlets nationwide" and advertise the Socks with Lifetime Warranty through print, television/radio, and online mediums across the United States. (*Id.*) Accepting Plaintiff's factual allegations as true, the Court finds Plaintiff has alleged the injury asserted in this case is fairly traceable to all the named defendants sufficient to withstand Defendants' motion to dismiss for lack of standing.[8]

---

Pro is aware of no authority suggesting it can be ordered to replace worn Socks with a discontinued product." (Doc. 41 at 13.) As best as the Court can discern, this is an improper argument to the extent Defendants have mounted a facial challenge – as opposed to a factual challenge – to the Court's subject-matter jurisdiction. *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914-15 (8th Cir. 2015) (explaining difference between facial attack to subject-matter jurisdiction where the court is limited to the face of the pleadings and a factual attack to subject-matter jurisdiction where "matters outside the pleadings, such as testimony and affidavits, are considered") (citation and quotation marks omitted). And even if the Court were not limited to the face of the pleadings in deciding Defendants' motion to dismiss, the Court notes that Defendants have only provided an unsupported assertion of fact in their motion to dismiss without any evidentiary support as to this fact.

[8] Defendants state that "Plaintiff has not alleged . . . that any of the Improper Defendants would be involved in the sock replacement process," and appears to assert that the replacement of any socks (and the decision whether or how to do so under an applicable warranty) would be accomplished only by a "Bass Pro store (operated by Defendant Bass Pro Outdoor World, LLC)," the latter which would then make the

8

### 4. Conclusion

For the reasons stated above, Defendants' motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction is **DENIED**.

## B. Rule 12(b)(6) – Failure to State a Claim

In addition to a Rule 12(b)(1) challenge, Defendants also argue that Plaintiff's amended complaint must be dismissed under Rule 12(b)(6) for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a "sheer possibility that a defendant acted unlawfully" to survive a motion to dismiss. *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (citation and quotation marks omitted omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Packard v. Darveau*, 759 F.3d 897, 899 n.2 (8th Cir. 2014) (citation and quotation marks omitted). However, the Court need not accept as true "pleadings that . . . are no more than conclusions." *Iqbal*, 556 U.S. at 679.

### 1. Count One – MMPA Claim

Defendants first argue that Plaintiff fails to state a plausible claim for relief under the MMPA. Section 407.020 of the Missouri Revised Statutes prohibits as an "unlawful practice" within Missouri "deception, fraud . . . false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." § 407.020.1, RSMo. To state a claim under the MMPA, Plaintiff must show: "(1) he purchased merchandise; (2) he purchased the merchandise for personal, family, or household use; (3) he suffered an ascertainable loss; and (4) the ascertainable loss was caused by a violation of the MMPA." *Anderson v. Bass Pro Outdoor World, LLC*, 355

---

replacement decision. (Doc. 19 at 13.) Defendants provide no evidence to support this factual assertion and, as explained in note 9 above, Defendants appear to mount a facial challenge to Plaintiff's standing in which the Court must accept as true the allegations in the complaint and may not look outside the complaint or documents necessarily embraced by or attached to the complaint.

F. Supp. 3d 830, 835 (W.D. Mo. 2018) (citing Mo. Rev. Stat. § 407.025.1; *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007)). Here, Defendants argue that Plaintiff fails to state a claim under the MMPA because he does not adequately allege that he suffered (1) an ascertainable loss (2) that was caused by conduct that violated the MMPA.

        **a.**      **Ascertainable Loss**

For claims under the MMPA, Missouri courts apply the "benefit of the bargain rule" to determine if a plaintiff has suffered an ascertainable loss, i.e., that the value of the product purchased by the plaintiff differs from the actual value of the product the plaintiff received. *Johnson v. Gilead Scis., Inc.*, 563 F. Supp. 3d 981, 989 (E.D. Mo. 2021) (citing *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. Ct. App. 2016); *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.3d 883, 886 (Mo. Ct. App. 1994)). Defendants argue that Plaintiff has failed to plead any facts that he was denied the benefit of his bargain. The Court disagrees. Plaintiff alleges that the lifetime warranty "was a material part" of his decision to purchase the Redhead Wool Socks and that he "would not have purchased the [Redhead Wool Socks], or would have paid less for it, had [he] known the [Redhead Wool Socks] do not come with a Lifetime Warranty." (Doc. 8 at ¶¶ 17, 51.) Further, Plaintiff alleges that contrary to Defendants' representations regarding the lifetime warranty, the Redhead Lifetime Guarantee All-Purpose Wool Socks are not exchanged for or replaced with for Redhead Lifetime Guarantee All-Purpose Wool Socks with a lifetime warranty but only with socks having a 60-day warranty. Plaintiff alleges a difference in value between "Socks covered by a Lifetime Warranty . . . and Socks not covered by any such warranty." (*Id.* at ¶ 49(a).) *See also Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 758-59 (W.D. Mo. 2015). Although it is somewhat a close call, the Court finds Plaintiff has sufficiently alleged an ascertainable loss under the benefit-of-the-bargain rule to state a claim under the MMPA and survive Defendants' motion to dismiss on this ground.

        **b.**      **Unlawful Practice under the MMPA**

Defendants also argue that Plaintiff fails to allege a violation of the MMPA. Specifically, Defendants argue that Plaintiff does not allege facts showing the advertising was deceptive or otherwise constitutes an unlawful practice under the MMPA. The MMPA prohibits as "an unlawful practice" "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission or any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." § 407.020.1, RSMo. Plaintiff

10

alleges that Defendants advertise and represent the lifetime warranty accompanying the Socks with a false or empty promise or warranty that they will replace the Socks for the consumer's lifetime with a pair of the Socks. Plaintiff also alleges that Defendants' replacement of the Socks under the lifetime warranty with 60-Day Socks is inconsistent with the Socks' lifetime warranty as it was represented. Plaintiff specifically alleges that the Socks are advertised, marketed, warranted, and sold with having a "lifetime guarantee," that they are "the last sock you'll ever need to buy," and that "if anything ever happens, if a dryer steals one of them on you, you bring the other one in, and we give you a brand-new pair of socks for [the] life" [*sic*]. Accordingly, Plaintiff sufficiently pleads a violation of the MMPA.

Defendants also argue that Plaintiff failed to plead the "who, what, where, when, and how" of the alleged deceptive/unfair practices required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting the fraud[.]" To comply with Rule 9(b)'s particularity requirement, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted). "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *Id.* (citations omitted).

Here, Plaintiff alleges with sufficient particularity the who, what, when, where, and how of the alleged unlawful practices under the MMPA: who (Defendants), what (lifetime warranty/lifetime guarantee means the Socks will be replaced with the Socks, specifically: "Lifetime guarantee – if they wear out, they get replaced!"; "lifetime guarantee"; "The Last Sock You'll Ever Need to Buy"; "[i]f they ever wear out, just return them for a FREE replacement"; "If anything ever happens . . . we give you a brand-new pair of socks for the life" [*sic*]), when (between 2014 and 2021), where (on the packaging and in television, print, and internet advertising), and how (the lifetime warranty/lifetime guarantee accompanying the Socks is not a lifetime guarantee but a one-time replacement with 60-day Socks).

### c. Conclusion

Defendants' motion to dismiss Count I for failure to state a claim is **DENIED**.

### 2. Count II – Breach of Express Warranty

Next, Defendants argue Plaintiff fails to state a claim for breach of express warranty. To state a claim for breach of an express warranty under Missouri law, a plaintiff must plead facts:

> (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact about the kind or quality of those goods; (3) the statement of fact was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. banc 2010) (citation omitted).

Specifically, Plaintiff alleges that Defendants "expressly warranted that the Socks would come with a Lifetime Warranty, so that a consumer could return the Socks for free lifetime replacement if the Socks were to become worn out or damaged by any reason." (Doc. 8 at ¶ 55.) Plaintiff alleges that under the terms of the express warranty "Defendants are obligated to replace for life worn or damaged Socks sold to Plaintiff and Class Members." (*Id.* at ¶ 56.) Plaintiff alleges that Defendants have breached the terms of the express warranty by replacing the Socks (under the purported lifetime warranty) with 60-day Socks. (*Id.* at ¶ 57.)

First, Defendants argue that Plaintiff fails to state an express warranty claim because he "do[e]s not demonstrate the Lifetime Warranty fails for the essential purpose or is unconscionable." (Doc. 19 at 25-26.) This argument appears to be based on § 400.2-719(1)(a), RSMo, providing under Missouri law that a warranty itself "may limit or alter the measure of damages recoverable . . . as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." The district court in *Patterson Oil Co., Inc. v. Verifone, Inc.*, No. 2:15-cv-4089, 2015 WL 6149594 (W.D. Mo. Oct. 19, 2015), recognized, accordingly, that a limitation within a warranty "applies unless the remedy fails of its essential purpose or is unconscionable." *Id.* at *4 (citation and quotation marks omitted). Whether a warranty has limited the available damages recoverable depends on "a plain interpretation of the contract language." *Id.* (citation and quotation marks omitted).

Defendants appear to concede, at least for purposes of their motion to dismiss, that "Bass Pro expressly warranted that the [Socks] would come with a Lifetime Warranty, which allegedly meant a consumer could return the Socks for free lifetime replacement if the Socks were to become worn out or damaged for any reason." (*See* Doc. 19 at 25.) As alleged by Plaintiff, "[u]nder the terms of the Lifetime Warranty, Defendants are obligated to replace for life worn or damaged

12

Socks sold to Plaintiff," which does not include replacing the Socks with 60-Day Socks. (Doc. 1 at ¶¶ 56-57.) In other words, the warranty at issue here is not an express limited warranty but is an express lifetime warranty. At any rate, it is not clear the plain language of the express warranty limits replacement of the Socks to a single replacement sock itself having a less-than-lifetime replacement guarantee or warranty (i.e., a 60-Day Sock). In other words, Plaintiff's claim appears to be that the Lifetime Warranty is not a limited warranty at all. Viewed in this way, Defendants' argument for dismissal grounded in § 400.2-719(1)(a) is unpersuasive and without merit.

Second, Defendants argue that Plaintiff fails to state an express warranty claim because he does not sufficiently allege that he notified Defendants of any nonconformity with the express warranty. To the contrary, Plaintiff alleges in his amended complaint that in January 2021 he attempted to return four pairs of socks but that he was told by the store's customer service department – over his "objections and demands" – that he could only exchange his Socks for 60-Day Socks. (Doc. 8 at ¶ 19.) The Court finds that Plaintiff has sufficiently alleged facts that he provided sufficient pre-suit notice as required by Missouri law to assert this warranty claim. *See* Mo. Rev. Stat. § 400.2-607(3)(a) (pre-suit notice requirement); *Patterson Oil*, 2015 WL 6149594, at *3; *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. banc 1993).

Finally, Defendants argue that Plaintiff fails to state a claim for breach of express warranty because he does not allege that Defendants failed to honor the lifetime warranty in that he does not allege he was ever denied a pair of replacement socks.[9] Plaintiff alleges that Defendants replace the Socks with 60-Day Socks, and that he tried to return a number of pairs of the Socks in January 2021 but was effectively denied. Plaintiff adequately alleges Defendants breached the express warranty to withstanding Defendants' motion to dismiss under Rule 12(b)(6).

Defendants' motion to dismiss Count II for failure to state a claim is **DENIED**.

## C. Count III – MMWA

Defendants argue that Plaintiff fails to state a warranty claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* in Count III because Plaintiff fails to state a breach-of-express-warranty claim in Count II. (Doc. 19 at 27.) Because the Court does not find

---

[9] Although couched in terms of Plaintiff's failure to plead an injury, this argument appears to really be that Plaintiff does not sufficiently allege Defendants breached the express warranty based on the replacement (or non-replacement) of the Socks.

13

Plaintiff failed to state a warranty claim under state law as set out above, Defendants' motion to dismiss Count III on the same basis is **DENIED**.

### D. Count IV – Unjust Enrichment

Fourth, Defendants argue that Plaintiff fails to state a claim for unjust enrichment. To plead a claim for unjust enrichment under Missouri law, a plaintiff must plead sufficient facts: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) (cleaned up).

Defendants first argue that Plaintiff fails to plead a claim for unjust enrichment because "Plaintiff's claim is based on the same conduct that forms the basis of his express warranty claim." (Doc. 19 at 27.) The law is well-settled that a claim for unjust enrichment is barred as a matter of law "where an express contract exists." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014) (citing *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)). Plaintiff acknowledges that his claim for unjust enrichment is inconsistent with his claim for breach of an express warranty. Nonetheless, Plaintiff also argues (persuasively) that it would be improper to dismiss the claim for unjust enrichment at this early pleading stage to the extent such claims may properly be pleaded in the alternative. *See also* Fed. R. Civ. P. 8(d)(2); *S&K Leimkuehler, Inc. v. Barcel USA, LLC*, No. 4:18-cv-00686-NKL, 2018 WL 6004687, at *5 (W.D. Mo. Nov. 15, 2018) (declining to dismiss alternatively pleaded unjust enrichment claim where plaintiff also asserted breach-of-contract claim) (collecting cases).[10]

Second, Defendants argue that Plaintiff fails to state a claim for unjust enrichment as to the third element – unjust retention of the benefit conferred. To be sure, "retention of the benefit is

---

[10] As pleaded, Plaintiff's unjust enrichment claim does not appear to be inseparable from Plaintiff's express warranty claim. For instance, Plaintiff alleges that Defendants intended for Plaintiff to confer a benefit by purchasing the Socks "as a result of . . . fraudulent, deceitful marketing and sales practices." (Doc. 1 at ¶ 79.) In this way Plaintiff's unjust enrichment claim does not appear to be based on the alleged express warranty, i.e., functionally meaning that the Socks would be replaced for the lifetime of the purchaser. Rather, Plaintiff's unjust enrichment claim appears to be based on the alternative claim that *despite* Defendants' marketing and sales practices, the Socks did not really come with that express warranty (or that the warranty was somehow materially different). In this way, the cases on which Defendants rely are distinguishable. *See Patterson Oil Co.*, 2015 WL 6149594, at *9 (dismissing plaintiff's unjust enrichment claim because it "arises out of the express warranty contract" to the extent plaintiff alleges the payments made to the defendant "were given with the expectation that the [product] would perform as represented and warranted").

not unjust if the parties received what they intended to obtain." *Anderson v. Bass Pro Outdoor World, LLC*, 355 F. Supp. 3d 830, 839 (W.D. Mo. 2018) (citing *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (other citations omitted). "Unjust enrichment of benefits only occurs when the benefits were conferred under a mistake of fact or under constraint." *Smith v. City of St. Louis*, 409 S.W.3d 404, 419 (Mo. Ct. App. 2013) (citation omitted). Plaintiff alleges he did not obtain what he bargained for, however. Specifically, Plaintiff alleges he conferred a benefit by "responding to Defendant's advertisement and . . . . purchasing the Socks." (Doc. 8 at ¶ 77.) Plaintiff alleges that Defendants were aware of and intended the benefit conferred (necessarily upon Plaintiff's purchase of the Socks) "as a result of its fraudulent, deceitful marketing and sales practices." (*Id.* at ¶¶ 78, 79.) Plaintiff alleges that he would not have purchased the Socks or would have paid less for them had he "known the Product does not come with a Lifetime Warranty." (*Id.* at ¶ 51.) Defendants' argument that Plaintiff fails to plead unjust retention of the benefit is without merit.

Defendants' motion to dismiss Count III for failure to state a claim is therefore **DENIED**.

### E. Count V (Fraud)

Defendants also argue that Plaintiff fails to state a claim for fraud. Under Missouri law, to plead a common law fraud claim a plaintiff must plead facts:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007) (citations omitted). Defendants argue that Plaintiff "has not adequately alleged a false representation, Bass Pro's knowledge of its falsity, or any resulting injury." (Doc. 19 at 29.) As set forth above, however, Plaintiff alleges Defendants represent that the Socks are sold with a "Lifetime guarantee," "meaning that a purchaser can return the Socks when they wear down and [Defendants] will always replace them with a new pair of Socks." (Doc. 8 at ¶ 3.) Plaintiff alleges these representations – on the packaging and in various ads regarding the Socks, as otherwise set out in Plaintiff's amended complaint – are false because the Socks, in reality, "cannot be replaced for any reason during a consumer's lifetime." (*Id.* at ¶ 5.) Moreover, Plaintiff alleges that the Socks he purchased are worth less because they are not actually covered by "such [lifetime]

15

warranty." (*Id.* at ¶ 49(a).) Accepting Plaintiff's allegations as true, the Court finds Defendants' arguments that Plaintiff fails to state a claim for common law fraud are without merit. Defendants' motion to dismiss Count V is therefore **DENIED**.

**F. Plaintiff states a claim against the "related" defendants**

Finally, Defendants argue that Plaintiff fails to state a claim against many of the separately named defendants who are identified as "related corporate entities."[11] (Doc. 19 at 30.) Specifically, Defendants argue that Plaintiff has failed to plead a factual basis against each of the defendants. Plaintiff alleges the Defendants "individually or collectively, through an integrated corporate structure . . . manufacture, market, and sell . . . the Socks" and "operate[] over forty retail outlets nationwide." (Doc. 8 at ¶ 9.) The Court agrees with Defendants that as a general matter parent companies are not liable for conduct by a subsidiary. (Doc. 19 at 30 (citing *Whitton v. Thyssenkrupp Elevator Corp.*, No. 5:20-CV-06100-BCW, 2020 WL 12688371, at *4 (W.D. Mo. Dec. 14, 2020).) In *Whitton*, for example, the district court dismissed the complaint asserted against a corporate defendant to the extent "the only allegations [against it] in the complaint . . . are those alleging [the corporation's] ownership interest in [corporate co-defendant]." 2020 WL 12688371, at *4. Here, though, Plaintiff alleges that the defendants acted individually or in concert, including through an integrated corporate structure, to manufacture, market, and sell the Socks. This is sufficient to withstand Defendants' motion to dismiss at this early pleading stage.[12] Defendants' motion to dismiss the "related" defendants is therefore **DENIED**.

**III. Conclusion**

Therefore, Defendants' motion to dismiss (Doc. 18) is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 3, 2023

---

[11] As best as the Court can discern, these entities consist of: Defendants Bass Pro, Inc.; BPS Direct, LLC; Bass Pro Group, LLC; Great American Outdoors Group, LLC; Great Outdoors Group, LLC; and American Sportsman Holdings Co. This would leave Defendant Bass Pro Outdoor World, LLC.

[12] In their reply, Defendants argue that Plaintiff failed to respond to this argument and thus waived any challenge to this portion of Defendants' motion to dismiss. (Doc. 41 at 26.) Although fundamentally different inquiries, the same allegations support (1) a finding that Plaintiff has standing to sue the named defendants, and (2) that Plaintiff has stated a claim against the named defendants. Plaintiff appears to have jointly addressed both issues in a single section of his response. The Court does not find Plaintiff waived his claims asserted against these defendants in doing so.